IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RONALD E. WRIGHT,

          Petitioner,

    v.                              CASE NO. 2:08-CV-477
                                           JUDGE HOLSCHUH
                                           MAGISTRATE JUDGE KING

PHIL KERNS, Warden,
Southern Ohio Correctional Facility,

          Respondent.

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant

to 28 U.S.C. §2254. This matter is before the Court on the petition, Doc. No. 1, respondent's

return of writ, Doc No. 5, and the exhibits of the parties. For the reasons that follow, the

Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**


### FACTS and PROCEDURAL HISTORY

The Ohio Court of Appeals for the Fourth District summarized the facts and

procedural history of this case as follows:

> On December 17, 1999, the Washington County Grand Jury
> returned an indictment that charged appellant with four
> counts of rape, in violation of R.C. 2907.02(A)(1)(b) and (B),
> which involved his girlfriend's eleven-year-old daughter,
> Samantha.

1

On July 10, 2000 and continuing on July 11, 2000, the trial court held a jury trial. At trial, the following evidence was adduced.

Samantha testified that appellant, with whom her mother lived, typically was the disciplinarian. She explained that her punishments ranged from performing exercises, to grounding or spankings. Samantha stated the appellant administered the spankings in the bathroom.

Samantha explained that beginning in May of 1999, appellant instituted a new type of punishment that she called "the option." Samantha stated that for her punishment appellant offered her the option of either receiving a spanking or performing oral sex upon appellant. Samantha testified that the first time appellant "offered" her this alternative discipline, she refused and received a spanking instead. To avoid the pain of the spankings, however, Samantha, on four or five occasions, chose "the option" instead of the spankings. Samantha stated that in mid- to late-December she finally told Melayne Pritchett, a family friend, because she worried that the same thing was happening to her brother or sisters.

Pritchett testified that she sometimes was present when appellant punished Samantha. Like Samantha, Pritchett stated that the spankings occurred in an upstairs bathroom. Pritchett testified that on some occasions, Samantha's punishment lasted approximately ten minutes. On other occasions, however, the punishment lasted up to one-half hour. Pritchett stated that on some occasions after Samantha had received her punishment, Samantha walked downstairs with a dazed look.

Over appellant's objection, the trial court permitted appellant's eighteen-year-old daughter, Briana Nunn, to testify about instances when appellant forced her to perform oral sex upon him. Nunn testified that beginning at the age of five or six, and continuing until the age of fifteen, appellant made her perform oral sex. She stated that he would state different reasons for why she had to do it: "If you do this, then you can go here, you can go there," or "if you do this, I won't cheat on your mother," or "I will tell her that I'm not cheating." Nunn stated that sometimes appellant would not let her go out with her friends

unless she performed oral sex.

Nunn stated that the oral sex encounters ended when she was fifteen. Nunn explained that as her father drove her to her boyfriend's house, he stated that if she wanted him to continue driving, she must perform oral sex. Nunn stated that she refused, they argued, and appellant finally took her to her boyfriend's house. Appellant never again made Nunn perform oral sex.

Nunn stated that when she was twelve or thirteen, she told a friend about the sexual abuse and that her friend's mother notified children services. During the investigation, however, Nunn denied that the sexual abuse occurred. Nunn explained that she decided not to tell the children services investigators about the sexual abuse because she did not want to hurt her mother.

Nunn stated that in April of 2000, she finally disclosed the sexual abuse information to law enforcement. She stated that she came forward because of Samantha's allegations against appellant.

On July 11, 2000, the jury found appellant guilty of all counts. On August 29, 2000, the trial court found appellant to be a sexual predator and sentenced appellant to four consecutive life sentences. Appellant filed a timely notice of appeal.

*State v. Wright,* 2001 WL 1627643 (Ohio App. 4th Dist. December 6, 2001). Represented by

new counsel, petitioner asserted the following assignments of error on direct appeal:

> 1. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT'S SUBSTANTIAL RIGHTS BY ADMITTING UNDULY PREJUDICIAL TESTIMONY ABOUT OTHER ACTS AND UNCHARGED MISCONDUCT BY THE DEFENDANT, THE ONLY PROBATIVE VALUE OF WHICH WAS TO ESTABLISH THE DEFENDANT'S BAD CHARACTER AND CONDUCT IN CONFORMITY THEREWITH. THE ADMISSION OF THIS TESTIMONY VIOLATED THE APPELLANT'S RIGHT TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT.

2. THE TRIAL COURT ERRED IN FAILING TO COMPLY WITH CRIM.R. 24(F) BY FAILING TO GRANT THE DEFENSE AN OPPORTUNITY TO EXERCISE A PEREMPTORY CHALLENGE TO THE ALTERNATE JURORS.

3. APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION.

*See id.* On December 6, 2001, the appellate court affirmed the trial court's judgment. *Id.* The appellate court denied petitioner's motion for reconsideration. *Exhibits 8 and 9 to Return of Writ.* Still represented by counsel, petitioner filed a timely appeal to the Ohio Supreme Court. He asserted the following propositions of law:

1. A threat of force can be inferred from the circumstances surrounding sexual conduct, but a pattern of incest with a separate individual is not a relevant circumstance from which to infer force. *State v. Schaim* (1992), 65 Ohio St.3d 51.... Accordingly, evidence of other acts with a separate individual are inadmissible in a rape trial unless they tend to prove one of the enumerated items set forth in R.C. 2907.02(D) or R.C. 2954.71.

2. When a defendant objects to a trial court's denial of his causal challenges, the defendant may choose to either remove the challenged jurors peremptorily and forego a later Sixth Amendment challenge or allow the juror to sit and preserve the Sixth Amendment claim for appeal....

*Exhibit 10 to Return of Writ.* On March 20, 2001, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. *Exhibit 11 to Return of Writ.* On May 1, 2002, the Ohio Supreme Court denied petitioner's

4

motion for reconsideration.  *Exhibits 12, 13 to Return of Writ.*  On March 20, 2002, the Ohio

Supreme Court granted petitioner's motion to certify conflict as follows:

> The court determines that a conflict exists; the parties are to brief the issue stated in the court of appeals' Entry on Application to Certify dated January 28, 2002:

> "[W]e find that our decision and judgment presents an actual conflict based upon the same question that was involved in the Twelfth District's decision and judgment. In [ *State v.* ] *Henderson* [(1991), 76 Ohio App.3d 290, 601 N.E.2d 596], the court concluded that a victim's uncorroborated allegations of sexual abuse did not fulfill the substantial proof requirement that the defendant committed other similar crimes. In [the case *sub judice*], we determined that a victim's uncorroborated allegation of prior sexual abuse was admissible. Thus, we declined to follow *Henderson.*

> "Accordingly, we grant appellant's motion to certify this matter to the Ohio Supreme Court for review and final determination."

*State v. Wright,* 94 Ohio St.3d 1504 (2002).  Petitioner raised the following propositions of

law:

> 1. A victim's uncorroborated allegations of sexual abuse by the defendant do not fulfill the substantial proof requirement that the defendant committed other similar crimes.

> 2. A victim's uncorroborated allegation of rape is not admissible under R.C. 2907.02 or R.C. 2945.59 for the purpose of proving that the defendant used force or threat of force in the alleged rape of a second minor victim.

*Exhibit 20 to Return of Writ.*  On April 9, 2003, the Ohio Supreme Court *sua sponte* dismissed

the certification of conflict as having been improvidently granted, there being a want of a conflict. *Exhibit 23 to Return of Writ.*

Represented again by new counsel, petitioner filed a delayed application to reopen his appeal pursuant to Ohio Appellate Rule 26(B). He asserted that he had been denied the effective assistance of counsel because his attorney failed to assert on direct appeal a federal claim that admission of unduly prejudicial other acts to prove criminal propensity violated due process. *Exhibit 24 to Return of Writ.* On November 6, 2003, the appellate court denied petitioner's delayed Rule 26(B) application. *Exhibit 25 to Return of Writ.* On March 24, 2004, the Ohio Supreme Court dismissed petitioner's subsequent appeal. *Exhibit 27 to Return of Writ.*

Petitioner also pursued post conviction relief. On July 2, 2001, while his direct appeal remained pending, petitioner filed a petition for post conviction relief in the state trial court. *Exhibit 14 to Return of Writ.* His post conviction petition was stayed pending resolution of petitioner's direct appeal. *See Exhibit 15 to Return of Writ.*

> On March 29, 2005, Wright moved the trial court to lift the stay on the post-conviction proceedings. The state moved to dismiss the petition on the ground that the petition was no longer timely, because Wright failed to request that the court lift the stay sooner. The court, noting that Wright timely filed his initial petition and that the state did not file a motion to dismiss for want of prosecution, denied the state's motion to dismiss and lifted the stay.
>
> In his petition, Wright asserted that his trial counsel was ineffective in that he failed to: (1) question witnesses, call potential witnesses, or otherwise present evidence regarding

> the victim's prior false allegations of sexual abuse; (2) present an expert witness; and (3) exercise all peremptory challenges, thereby waiving all but plain error on the court's ruling denying his challenge to a prospective juror.

*State v. Wright,* 2006 WL 3861078 (Ohio App. 4th Dist. December 21, 2006). The trial court denied petitioner's post conviction petition and, on December 21, 2006, the Ohio Court of Appeals affirmed the trial court's judgment. *Id.; Exhibits 33-35.* On May 16, 2007, the Ohio Supreme Court dismissed petitioner's subsequent appeal. *State v. Wright*, 113 Ohio St.3d 1513 (2007).

With the assistance of counsel, petitioner now alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

> 1. The Court of Appeals erred when it affirmed the judgment of the trial court admitting the other act evidence. Fourteenth Amendment.
>
> 2. The trial court erred in failing to grant defendant's cause challenge as to a biased juror. Sixth and Fourteenth Amendments.
>
> 3. Petitioner's convictions and sentences are constitutionally infirm because he was deprived of effective assistance of counsel during his trial. Sixth and Fourteenth Amendments.

It is the position of the respondent that petitioner's claims are without merit.

## CLAIM ONE

In claim one, petitioner asserts that he was denied a fair trial because the trial court permitted the prosecution to admit testimony from Briana Nunn regarding petitioner's

prior bad acts, *i.e.*, instances when petitioner had allegedly forced her to perform oral sex.

The state appellate court rejected this claim as follows:

> In his first assignment of error, appellant argues that the trial court erred by permitting Briana to testify about appellant's alleged prior sexual acts. Appellant asserts that the trial court erred by admitting the other acts evidence because: (1) the evidence was offered only to establish his propensity to commit the crime in question; (2) the evidence did not relate to a material issue in the trial; (3) the evidence did not tend to prove one of the elements of the crime; (4) substantial proof that appellant committed the prior acts does not exist because the evidence was unsubstantiated, was uncorroborated, and was too remote in time; and (5) the probative value of the evidence did not outweigh the prejudicial effect.

> The state, on the other hand, contends that Nunn's testimony falls within the "scheme, plan, or system" exception and that her testimony helped prove a material issue in the trial, namely whether appellant used force or threat of force. Moreover, the state disagrees with appellant that the prejudicial impact of Nunn's testimony outweighed its probative force.

> A
> STANDARD OF REVIEW

> Initially, we note that the decision to admit or exclude relevant evidence is within the sound discretion of the trial court. *State v. Bey* (1999), 85 Ohio St.3d 487, 490, 709 N.E.2d 484, 490. The trial court's decision to admit or exclude relevant evidence cannot be reversed absent an abuse of that discretion. *See, e.g., State v. Combs* (1991), 62 Ohio St.3d 278, 581 N.E.2d 1071; *State v. Sage* (1987), 31 Ohio St.3d 173, 510 N.E.2d 343; *State v. Rooker* (Apr. 15, 1993), Pike App. No. 483, unreported. The term "abuse of discretion" implies more than an error of law or judgment. Rather, the term suggests that the trial court acted in an unreasonable, arbitrary, or unconscionable manner. *See, e.g., State v. Xie* (1992), 62 Ohio St.3d 521, 584 N.E.2d 715; *State v. Montgomery* (1991), 61 Ohio St.3d 410, 575 N.E.2d 167. Furthermore, when applying the abuse of discretion standard,

a reviewing court is not free to merely substitute its judgment for that of the trial court. *In re Jane Doe 1* (1991), 57 Ohio St.3d 135, 566 N.E.2d 1181 (citing *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 359 N.E .2d 1301).

B

ADMISSIBILITY OF OTHER ACT EVIDENCE

Generally, all relevant evidence is admissible. See Evid.R. 402. Evid.R. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

The trial court must deem relevant evidence inadmissible, however, if the introduction of the evidence violates the United States or the Ohio Constitutions, an Ohio statute, the Ohio Rules of Evidence, or "other rules prescribed by the Supreme Court of Ohio." Evid.R. 402. Additionally, relevant "evidence is not admissible if its probative value * * * substantially outweigh[s] * * * the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A).

Although evidence of an accused's character, including his prior "bad acts," in a criminal case may be relevant, Evid.R. 404 sets forth a general bar against the use of such character evidence. Of importance to the case *sub judice*, Evid.R. 404(B) provides as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence or mistake or accident.

Additionally, in a case involving a rape allegation, R.C. 2907.02(D) generally prohibits evidence of specific instances of the defendant's sexual activity. The statute provides:

Evidence of specific instances of the defendant's sexual activity, opinion evidence of the defendant's sexual activity, and reputation evidence of the defendant's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, the defendant's past sexual activity with the victim, or is admissible against the defendant under section 2945.59 of the Revised Code, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."

Thus, in a case involving a violation of R.C. 2907.02, evidence of the defendant's sexual activity may not be admitted unless: (1) the evidence relates to a material issue; (2) the inflammatory or prejudicial nature of the evidence does not outweigh its probative value; and (3) the evidence (a) relates to the origin of semen, pregnancy, or disease, (b) relates to the defendant's past sexual activity with the alleged victim of the crime, or (c) is admissible pursuant to R.C. 2945.59. *See* R.C. 2907.01(D).

In the instant case, the other acts evidence concerns appellant's sexual activity. The other acts evidence does not, however, relate to the origin of semen, pregnancy, disease nor to appellant's past sexual activity with the alleged victim of the crime. We therefore must determine whether the evidence is admissible pursuant to R.C. 2945.59.

R.C. 2945.59 provides:

In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive

or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

R.C. 2945.59 should be construed in conformity with Evid.R. 404(B). *See State v. Broom* (1988), 40 Ohio St.3d 277, 281-282, 533 N.E .2d 682, 689-690; *State v. Clemons* (1994), 94 Ohio App.3d 701, 707, 641 N.E.2d 778, 782. Moreover, because both the statute and the rule constitute exceptions to the common law prohibition against admitting a defendant's other acts to prove conforming conduct, the rule and the statute "must be construed against admissibility, and the standard for determining admissibility of such evidence is strict." *Broom*, 40 Ohio St.3d at 281-282, 533 N.E.2d at 689-690.

In *State v. Schaim* (1992), 65 Ohio St.3d 51, 600 N.E.2d 661, the court discussed the underlying rationale for the limited admissibility of other acts evidence as follows:

> The admissibility of other acts evidence is carefully limited because of the substantial danger that the jury will convict the defendant solely because it assumes that the defendant has a propensity to commit criminal acts, or deserves punishment regardless of whether he or she committed the crime charged in the indictment. *See State v. Curry* (1975), 43 Ohio St.2d 66, 68, 330 N.E.2d 720, 723. This danger is particularly high when the other acts are very similar to the charged offense, or of an inflammatory nature, * * *. The legislature has recognized the problems raised by the admission of other acts

evidence in prosecutions for sexual offenses, and has carefully limited the circumstances in which evidence of the defendant's other sexual activity is admissible.

*Schaim*, 65 Ohio St.3d at 59, 600 N.E.2d at 668.

Although both R.C. 2945.59 and Evid.R. 404(B) carefully limit the admissibility of other acts evidence, neither the statute nor the rule contains an exhaustive list of permissible purposes for which other acts evidence may be offered. *See State v. Smith* (1990), 49 Ohio St.3d 137, 140, 551 N.E.2d 190, 193 (noting that "Evid.R. 404(B) permits 'other acts' evidence for 'other purposes' including, but not limited to, certain enumerated issues"); *State v. Watson* (1971), 28 Ohio St.2d 15, 20-21, 275 N.E.2d 153, 157 (stating that other acts evidence "was not inadmissible simply because it did not fall within the exceptions permitting introduction of prior acts specified in R.C. 2945.59")); *see, also, State v. Miller* (Oct. 14, 1993), Meigs App. No. 92CA496, unreported. Rather, other acts evidence generally is admissible if the evidence does not otherwise violate the general rule against propensity evidence. *State v. Roe* (1989), 41 Ohio St.3d 18, 23, 535 N.E.2d 1351, 1359 (noting that the other acts evidence "w[as] admitted for purposes ' "other than to show mere propensity or disposition on the accused's part to commit the crime" ' ") (quoting *State v. Watson* (1971), 28 Ohio St.2d 15, 21, 275 N.E.2d 153, 156 and Evid.R. 404(B)); *see, also, State v. Aliff* (Apr. 12, 2000), Lawrence App. No. 99 CA 8, unreported; Bryden and Park, Other Crimes Evidence in Sex Offense Cases (1994), 78 Minn.L.Rev. 529, 540 ("Uncharged misconduct is admissible, subject to balancing for prejudice, when it is offered for a purpose that does not require" "an inference of bad character from bad acts, and then an inference of guilt to the crime charged from the bad character.").

As the court explained in *Watson*, 28 Ohio St.2d at 21, 275 N.E.2d at 157:

" * * * It is an established principle of law

that, notwithstanding the general rule that evidence of other criminal acts is not admissible, such 'general rule of exclusion does not apply where the evidence of another crime is relevant and tends directly * * * to prove * * * [the] accused's guilt of the crime charged, or to connect him with it, or to prove some particular element or material fact in such crime; and evidence of other offenses may be received if relevant for any purpose other than to show mere propensity or disposition on [the] accused's part to commit the crime.' 22A Corpus Juris Secundum 744, Section 683.

Stated another way, the rule is that 'except when it shows merely criminal disposition * * * evidence that is relevant is not excluded because it reveals the commission of an offense other than that charged. "The general tests of the admissibility of evidence in a criminal case are: * * * does it tend logically, naturally, and by reasonable inference to establish any fact material for the people, or to overcome any material matter sought to be proved by the defense? If it does, then it is admissible, whether it embraces the commission of another crime, or does not, whether the other crime be similar in kind or not, whether it be part of a single design or not."' *People v. Peete* (1946), 28 Cal.2d 306, 314, 169 P.2d 924."

The *Watson* court therefore "repudiate[d] the notion that criminality of conduct offered for some relevant purpose is an obstacle to its reception." *Watson,* 28 Ohio St.2d at 21, 275 N.E.2d at 157.

Thus, both the statute and the rule permit other acts evidence: (1) if the evidence is offered to show one of the matters enumerated in the statute or the rule; or (2) if the evidence tends to show any other matter at issue, as long as the evidence does not tend only to show the accused's propensity to commit the crime in question. *See State v. Smith* (1992), 84 Ohio App.3d 647, 664, 617 N.E.2d 1160, 1172 (stating that other acts

"evidence is never admissible when its sole purpose is to establish that the defendant committed the act alleged of him in the indictment"); *see, also, State v. Bey* (1999), 85 Ohio St.3d 487, 490, 709 N.E.2d 484, 490-91; *see, e.g., State v. Tibbetts* (2001), 92 Ohio St.3d 146, 161, 749 N.E.2d 226, 249; State v. Williams (1997), 79 Ohio St.3d 1, 11, 679 N.E.2d 646, 657. Thus, to determine whether to admit other acts into evidence, a court must evaluate whether the evidence relates to one of the matters set forth in R.C. 2945.59 or Evid.R. 404(B), or whether it relates to a matter other than the defendant's propensity to commit the crime in question. *See, generally, State v. Slagle* (1992), 65 Ohio St.3d 597, 606, 605 N.E.2d 916, 926; *State v. Gardner* (1979), 59 Ohio St.2d 14, 20, 391 N.E.2d 337, 342; *Watson, supra.*

After a court determines that certain evidence is not inadmissible character or propensity evidence, the court next must decide whether the evidence is relevant; that is, whether the evidence relates to a material issue at trial, whether the evidence tends to prove that material issue, and whether substantial proof exists that the defendant committed the alleged other acts. *See, generally, State v. Lowe* (1994), 69 Ohio St.3d 527, 530, 634 N.E .2d 616, 619; *Slagle; Gardner.* Relevant evidence tends to establish a fact that is material to the action. To assess whether certain evidence is material, a trial court must evaluate:

> "the relation between the propositions for which the evidence is offered and the issues in the case. If the evidence is offered to help prove a proposition which is not a matter in issue, the evidence is immaterial. What is 'in issue,' that is, within the range of the litigated controversy, is determined mainly by the pleadings, read in the light of the rules of pleadings and controlled by the substantive law."

McCormick, Evidence (4 Ed.Strong Ed.1992) 338, Section 185.

Once a court determines that evidence is material, the court then must consider the probative value of the evidence; that is, "the tendency of evidence to establish the proposition that it is offered to prove." *Id.* at 339. For evidence to have probative force, "the evidence must be more (or less) probable when the disputed fact is true rather than false." *Id.*

For other acts evidence to have probative value, substantial proof must exist that the defendant committed the act. *See, e.g., Bey,* 85 Ohio St.3d at 490, 709 N.E.2d at 490. Moreover, the other acts must not lack a temporal, modal, or situational relationship to the crime charged. *See Schaim*, 65 Ohio St.3d at 60, 600 N.E.2d at 669; *State v. Snowden* (1976), 49 Ohio App.2d 7, 10, 359 N.E.2d 87, 91. Other acts evidence is permissible if "such other acts 'tend to show' certain things, *e.g.*, motive and intent, as identified in the statute." *State v. Gumm* (1995), 73 Ohio St.3d 413, 426, 653 N.E.2d 253, 266. " 'If such other acts do in fact "tend to show" any of those things they are admissible notwithstanding they may not be "like" or "similar" to the crime charged.' " *Id.* (quoting *State v. Flonnory* (1972), 31 Ohio St.2d 124, 126, 285 N.E.2d 726, 729).

Once a court decides that the evidence relates to a matter other than the defendant's character or propensity to commit the crime and that the evidence is relevant, the court next must determine whether the prejudicial impact of the evidence outweighs the probative value of the evidence. R.C. 2907.02(D); *see, also*, Evid.R. 403.

With the foregoing principles in mind, we now consider appellant's contention that Nunn's testimony concerning appellant's alleged prior sexual acts constituted inadmissible propensity evidence.

*          *          *

In the case at bar, we believe that the other acts evidence helped to establish an element of the charged crime. Appellant was charged with a violation of R.C. 2907.02(A)(1)(b), with a specification that he purposely compelled his victim to submit by force or by the threat of force. See R.C. 2907.02(B). Thus, as

part of its case the state was required to prove that appellant used force or threatened the use of force. We believe, as did the trial court, that Nunn's testimony concerning appellant's alleged prior sexual conduct helped to demonstrate that appellant purposely compelled the victim (Samantha) to submit by force or threat of force.

R.C. 2901.01 defines "force" as "any violence, compulsion, or constraint physically exerted by any means upon or against a person." "A defendant purposely compels another to submit to sexual conduct by force or threat of force if the defendant uses physical force against that person, or creates the belief that physical force will be used if the victim does not submit." *Schaim, supra,* paragraph one of the syllabus.

In *State v. Eskridge* (1988), 38 Ohio St.3d 56, 526 N.E.2d 304, paragraph one of the syllabus, the Ohio Supreme Court explained the level of force required to be established in a case involving the rape of a child:

"The force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other. With the filial obligation of obedience to a parent, the same degree of force and violence may not be required upon a person of tender years, as would be required were the parties more nearly equal in age, size and strength. ( *State v. Labus* [1921], 102 Ohio St. 26, 38-39, 130 N.E. 161, 164.)"

In cases involving children "coercion is inherent in the parent-child relationship * * * under these special circumstances '[f]orce need not be overt and physically brutal, but can be subtle and psychological.' *Eskridge*, 38 Ohio St.3d at 58-59, 526 N.E.2d at 306." *Schaim,* 65 Ohio St.3d at 54-55, 600 N.E.2d at 655. As the court explained in *Schaim:*

"Because of the child's dependence on his or her parents, a child of tender years has no real power to resist his or her parent's command, and every command contains an implicit threat of punishment for failure to obey. Under these circumstances, a minimal degree of force will satisfy the

elements of forcible rape."

*Id.*, 65 Ohio St.3d at 55, 600 N.E.2d at 655. The *Eskridge* court similarly observed:

" ' * * * Sexual activity between a parent and a minor child is not comparable to sexual activity between two adults with a history of consensual intercourse. The youth and vulnerability of children, coupled with the power inherent in a parent's position of authority, creates a unique situation of dominance and control in which explicit threats and displays of force are not necessary to effect the abuser's purpose.' *State v. Etheridge* (1987), 319 N.C. 34, 47, 352 S.E.2d 673, 681."

*Id.*, 38 Ohio St.3d at 59, 526 N.E.2d at 307; *see, also, State v. Dye* (1998), 82 Ohio St.3d 323, 329, 695 N.E.2d 763, 767-68.

Consequently, when an alleged perpetrator of the sexual abuse is a person in a position of authority over the child, force may be inferred. *See Dye*, syllabus ("A person in a position of authority over a child under thirteen may be convicted of rape of that child with force pursuant to R.C. 2907.02(A)(1)(b) and (B) without evidence of express threat of harm or evidence of significant physical restraint."); *see, also, Eskridge*, 38 Ohio St.3d at 58-59, 526 N.E.2d at 306 (noting that case involved " 'a child being told to do something by an important figure of authority, and commanded not to tell anyone about it' " (quoting *State v. Fowler* (1985), 27 Ohio App.3d 149, 154, 500 N.E.2d 390, 395)).

In the case *sub judice*, Nunn's testimony helped to demonstrate that appellant used force or threatened the use of force when committing the crimes against Samantha. Nunn testified that appellant (her father) forced her to perform oral sex by telling her that her refusal would result in the denial of various privileges. In a case involving a minor child and a parent or parent-figure, such evidence sufficiently tends to show the element of psychological force. Therefore, this evidence constitutes admissible other acts evidence which helps to establish the element of force or the threatened use of force in a R.C. 2907.02(A)(1)(b) case with an R.C. 2907.02(B) specification. *See Smith, supra; See State v. Poe* (Oct. 24, 2000),

Franklin App. No. 00AP-300, unreported (evidence of defendant's prior sexual acts admissible to establish element of force); *State v. Alston* (June 14, 1996), Lake App. No. 94-L-096, unreported (permitting other acts evidence to help establish element of force); *State v. Rodrigues* (Mar. 26, 1996), Franklin App. No. 95APA06-683, unreported (permitting evidence of the defendant's past sexual activity with his daughter to help prove the element of force in a rape trial); *State v. James* (Aug. 24, 1995), Hardin App. No. 6-94-18, unreported (permitting evidence of the defendant's past sexual activity with his daughter to help prove the element of force in a subsequent rape trial); *State v. Pennington* (July 30, 1991), Franklin App. No. 91AP-13, unreported (holding that the defendant's prior acts of violence and coercion helped prove the element of force in rape trial); *State v. Colvin* (Aug. 16, 1989), Hamilton App. No. C-880430, unreported ("Evidence of other acts of sexual abuse and violence directed toward his stepdaughter and other family members was admissible at trial because it was relevant and material to prove an element of * * * force.").

Appellant asserts that *Schaim* mandates a different conclusion. In *Schaim,* the court held:

> " * * * * A threat of force can be inferred from the circumstances surrounding sexual conduct, but a pattern of incest will not substitute for the element of force where the state introduces no evidence that an adult victim believed that the defendant might use physical force against her. ( *State v. Eskridge* [1988], 38 Ohio St.3d 56, 526 N.E.2d 304, distinguished.)"

*Id.,* paragraph one of the syllabus. In *Schaim*, the court concluded that parental sexual abuse of an adult child does not create an inference of force, but that parental sexual abuse of a four-year-old child may create an inference of force. The *Schaim* court thus found insufficient evidence to support the forcible rape conviction against the defendant's twenty-year-old daughter. The court noted its *Eskridge* holding,

but stated that "[t]he same rationale does not apply to an adult." *Schaim*, 65 Ohio St at 55, 600 N.E.2d at 665.

Unlike *Schaim*, the other acts evidence in the case *sub judice* involves the sexual abuse of the appellant's live-in girlfriend's minor daughter, not an adult daughter. Moreover, the state's evidence did not consist simply of incestuous relations, but of appellant's method of psychologically compelling the victim to engage in sexual activities.

Consequently, we disagree with appellant that the other acts evidence constituted improper propensity evidence. Rather, we agree with the trial court's conclusion that the evidence tended to show an element of the crime that was a material issue in the trial.


## D
## RELEVANCY

Having found that the evidence was not improper character evidence but instead was admissible as tending to prove an element of the crime, we must next consider appellant's claim that the evidence was not relevant because: (1) the other acts evidence did not relate to a material issue in the trial; (2) the other acts evidence did not logically tend to prove the element of force; (3) the other acts occurred too remote in time to have any probative value; and (4) substantial proof did not exist that appellant committed the other acts.

First, we disagree with appellant that the other acts evidence did not relate to a material issue in the trial. As we discussed *supra*, the other acts evidence related to the element of force or the threat of the use of force. Because the state was required to prove this element beyond a reasonable doubt, it certainly constituted a material issue in the trial.

Appellant nevertheless asserts that like *Schaim*, "the main issue," in the case at bar was credibility. Appellant asserts that if the jury believed Samantha's testimony, no material issue existed as to whether appellant used force.

*Schaim*, 65 Ohio St.3d at 61, 600 N.E.2d at 669.

We note, however, that the Ohio Supreme Court has pointed out that " 'need is irrelevant to an Evid.R. 404(B) objection.' " *Bey*, 85 Ohio St.3d at 491, 709 N.E.2d at 491 (quoting *State v. McNeill* (1998), 83 Ohio St.3d 438, 442, 700 N.E.2d 596, 603). In *Bey* and *McNeill*, the court stated that even though the state presents other evidence to establish a matter sought to be proven by other acts evidence, the other acts evidence still is admissible as corroborating evidence. We therefore disagree with appellant's argument that Nunn's testimony was improper other acts evidence simply because it was corroborative.

Second, we disagree with appellant that Nunn's testimony did not logically tend to show that appellant used force against Samantha. It is well-settled that for other acts evidence to be admissible, the other acts evidence need not be "identical" to the crime charged. Instead, other acts evidence is admissible if it "tends to show" a material issue at trial. *See Gumm, supra; Flonnory, supra.*

As the court observed in *Flonnory*, 31 Ohio St.2d at 126, 285 N.E.2d at 729:

> "Much confusion about R.C. 2945.59 might be avoided if it were observed that nowhere therein do the words 'like' or 'similar' appear. The statute permits the showing of 'other acts' when such other acts 'tend to show' certain things. If such other acts do in fact 'tend to show' any of those things they are admissible notwithstanding they may not be 'like' or 'similar' to the crime charged."

*See, also, State v. Hill* (1992), 64 Ohio St.3d 313, 595 N.E.2d 884.

In the case at bar, although appellant's method of using psychological force to compel Nunn and Samantha differed somewhat, his use of psychological force against Nunn tended

to show that he used psychological force against Samantha. *See, generally, State v. Jamison* (1990), 49 Ohio St.3d 182, 187, 552 N.E.2d 180, 186 (noting that dissimilarities between the crime charged and other acts did not render other acts evidence inadmissible).

Third, we disagree with appellant that the other acts about which Nunn testified were too remote to be relevant. A prior act which is " * * * too distant in time or too removed in method or type has no permissible probative value." *Snowden*, 49 Ohio App.2d at 10, 359 N.E.2d at 91. In the case at bar, the other acts occurred approximately three years from the time of the trial. We do not believe that this time frame is too remote in time to have probative value. *See, generally, State v. Blankenship* (Sept. 1, 1993), Summit App. No. 16019, unreported (stating that eight years between the other act and the crime charged is not too remote in time). Moreover, we note that the other acts and the crime charged are not too remote in method or in type so as to be of no probative value. The other acts and the crime charged both involve appellant, a parent to one victim and a parental figure to another, employing coercive tactics to engage the victims in sexual conduct.

Fourth, we further disagree with appellant that substantial proof does not exist to support the conclusion that appellant committed the other acts. Appellant argues that because Nunn's testimony was unsubstantiated and uncorroborated, and because she had a motive to lie, FN9 her testimony did not fulfill the substantial proof requirement. We agree with appellant that for other acts evidence to be admissible, substantial proof must exist that the defendant committed the other acts. *See, e.g., Bey*, 85 Ohio St.3d at 490, 709 N.E.2d at 490. Substantial proof does not, however, mean proof beyond a reasonable doubt. *See Jamison*, 49 Ohio St.3d at 187, 552 N.E.2d at 185 citing *State v. Carter* (1971), 26 Ohio St.3d 79, 269 N.E.2d 115.

FN9. Appellant submits that Nunn had a motive to lie about the sexual abuse allegations because appellant helped secure an unrelated criminal conviction against her husband.

In *State v. Sieng* (Dec. 30, 1999), Franklin App. No. 99AP-282, unreported, the defendant asserted that substantial proof did not exist that he committed the other act because the uncorroborated testimony of a convicted drug dealer was the only evidence that the defendant committed the other act. The court determined that substantial proof did in fact exist that the defendant committed the other act. The court noted that the convicted drug dealer's uncorroborated testimony presented a question of credibility -- an issue reserved to the jury -- not an issue of admissibility. The court stated:

> "Generally, the weight to be given to the evidence and the credibility of witnesses are primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. * * * * Thus, while the state's only proof of the [other act] was not overwhelming and consisted solely of testimony of the perpetrator, the testimony was admissible without corroboration. *See State v. Myles* (Sept. 18, 1980), Montgomery App. No. CA 6507, unreported (rejecting defendant's argument that similar acts cannot be introduced based solely on uncorroborated testimony of a co-defendant)."

In *State v. Henderson* (1991), 76 Ohio App.3d 290, 601 N.E.2d 596, the court reached a contrary conclusion. In *Henderson*, the court determined that a victim's unsubstantiated and uncorroborated allegations of sexual abuse did not fulfill the substantial proof requirement. In *Henderson*, the defendant was convicted of gross sexual imposition with a specification that he purposely compelled the victim to submit by force or threat of force. To establish the element of force, the victim testified about a past episode of the defendant's sexual misconduct which occurred seven or eight years prior to the trial.

On appeal, the court held that the trial court should have excluded the other acts evidence. In addition to finding that the

other acts occurred too remote in time, the court noted that the victim's testimony was uncorroborated. *Henderson,* 76 Ohio App.3d at 295, 601 N.E.2d at 599-600.

Appellant asserts that like *Henderson,* in the case at bar Nunn's testimony was uncorroborated. We decline, however, to follow *Henderson.* FN10 We, like the *Sieng* court, do not believe that the substantial proof requirement necessitates that independent evidence corroborate other acts testimony. FN11 Instead, we believe that the substantial proof requirement is satisfied if at least one witness who has direct knowledge of the other act can testify to the other act. The jury may then fulfill its duty and evaluate the witness's testimony and credibility. A jury may, of course, choose to believe all, part or none of the testimony of any witness who offers testimony.

FN10. We note that in cases involving rape or gross sexual imposition, R.C. 2907.02(D) and R.C. 2907.05(D) permit evidence of the defendant's past sexual activity with the victim and does not require corroboration.

FN11. Our research has revealed no other Ohio case that has followed *Henderson* and imposed a requirement that other acts evidence be corroborated.

We therefore disagree with appellant's contention that in the instant case the other acts evidence was not relevant.

E
PREJUDICIAL IMPACT

Appellant next asserts that even if the other acts evidence was otherwise admissible, the trial court should have nevertheless excluded the evidence because it was unfairly prejudicial and Evid.R. 403(A) mandated its exclusion. We disagree with appellant.

Evid.R. 403(A) provides: "Exclusion Mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice * * *."

> Exclusion on the basis of unfair prejudice involves more than a balance of mere prejudice. If unfair prejudice simply meant prejudice, anything adverse to a litigant's case would be excludable under Rule 403. Emphasis must be placed on the word 'unfair.' Unfair prejudice is that quality of evidence which might result in an improper basis for a jury decision. Consequently, if the evidence arouses the jury's emotional sympathies, evokes a sense of horror, or appeals to an instinct to punish, the evidence may be unfairly prejudicial. Usually, although not always, unfairly prejudicial evidence appeals to the jury's emotions rather than intellect.

Weissenberger, Ohio Evidence (2000) 85-87, Section 403.3, quoted in *Oberlin v. Akron Gen. Med. Ctr.* (2001), 91 Ohio ST.3d 169, 172, 743 N.E.2d 890, 893.

The Ohio Supreme Court has noted that the prejudicial impact of other acts evidence is minimized if the trial court properly instructs the jury as to the limited use of this particular evidence. In *Bey*, 85 Ohio St.3d at 491, 709 N.E.2d at 492, the court noted:

> * * * [T]he prejudicial impact of the 'other acts' evidence was minimized because the trial court * * * twice instructed the jury that it could consider the [other act] evidence only on the disputed issue of [the defendant's] identity * * *. Absent evidence to the contrary, we must presume that the jury followed these instructions. *See State v. Woodard* (1993), 68 Ohio St.3d 70, 73-74, 623 N.E.2d 75, 78.

In the case at bar, we recognize that the other acts evidence certainly constituted evidence adverse to appellant's case. We do not agree with appellant, however, that the other acts

evidence was unfairly prejudicial. Nunn's testimony helped to prove an element of the crime. Moreover, we note that the trial court twice instructed the jury that it could consider the other acts evidence only as it related to the element of force or the threat of force. *See Bey.*

Consequently, we disagree with appellant that the danger of unfair prejudice substantially outweighed the probative value of the other acts evidence.

Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

*State v. Wright, supra*, 2001 WL 1627643 (some footnotes omitted).

Under 28 U.S.C. § 2254(e)(1), the state court's factual findings are presumed to be correct:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Additionally, the state court's decision is binding on this Court unless that decision is contrary to or involves an unreasonable application of clearly established federal law as determined by the United States Supreme Court:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor,* 529 U.S. 362, 412-13 (2000). Petitioner has failed to meet this standard here.

Federal habeas review of state court evidentiary rulings is extremely limited. *Waters v. Kassulke*, 916 F.2d 329, 335 (6th Cir. 1990). Evidentiary questions generally do not rise to a constitutional level unless the error was so prejudicial as to deprive a defendant of a fundamentally fair trial, thereby violating due process. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *see also Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983). When such errors are alleged, the federal court's inquiry in reviewing these claims is directed to whether the evidence was rationally connected to the crime charged. *Carter v. Jago*, 637 F.2d 449, 457 (6th Cir. 1980). For the reasons addressed by the state appellate court, such were the circumstances here. Further,

> [b]oth the Supreme Court and the Sixth Circuit have

repeatedly held that a defendant is not denied a fair trial by the admission of prior bad acts evidence which is relevant in the defendant's trial. *See Estelle*, 502 U.S. at 69-70; *Dowling v. United States*, 493 U.S. 342, 353-54, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990); *Coleman v. Mitchell*, 268 F.3d 417, 439-40 (6th Cir. 2001); *Pennington v. Lazaroff*, 13 Fed. Appx. 228, 232 (6th Cir. 2001) (*per curiam*) (unpublished); *Manning v. Rose*, 507 F.2d 889, 893-95 (6th Cir. 1974).

*Norris v. Davis*, unreported, 2006 WL 1581410 (E.D. Michigan May 3, 2006). Moreover,

[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence. In *Estelle v. McGuire,* the Supreme Court declined to hold that the admission of prior injury evidence violated due process, thus warranting habeas relief. 502 U.S. 62, 75, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). The Court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime. *Id*. at 75 n. 5, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385. Moreover, in *Spencer v. Texas*, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967), the Supreme Court rejected the argument that the Due Process Clause requires the exclusion of prejudicial evidence, even though limiting instructions were given and a valid state purpose is served. *Id*. at 563-64, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606. The Court recognized that it was not "a rule-making organ for the promulgation of state rules of criminal procedure. And none of the specific provisions of the Constitution ordains this Court with such authority." *Id*. at 564, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606. While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172, *117 S.Ct. 644, 136 L.Ed.2d 574 (1997); Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), it has not explicitly addressed the issue in constitutional terms. Accordingly, the district court correctly found that there is no Supreme Court precedent that the trial court's decision could be deemed "contrary to," under AEDPA.

*Bugh v. Mitchell*, 329 F.3d 469, 512-13 (6th Cir. 2003).  Therefore, claim one is without merit.

## CLAIM TWO

In claim two, petitioner asserts that he was denied a fair trial because the trial court refused to remove a prospective juror for cause.  That juror was  seated as an alternate juror which, petitioner alleges, prejudiced him when, during trial, a juror advised the trial court that she knew the alleged victim.  According to petitioner, his attorney failed to request the removal of that other juror because the allegedly tainted alternate would have been her replacement.  The state appellate court rejected this claim as follows:

> [A]ppellant asserts that the trial court erred by failing to grant appellant's challenge for cause as to a prospective juror. Appellant argues that the trial court should have granted the challenge for cause because the juror repeatedly indicated her inability to be fair and impartial. Appellee contends that after consideration of all of the prospective juror's statements, the trial court did not abuse its discretion by failing to excuse the juror.
>
> During voir dire, [the] prospective juror [who was eventually seated as an alternate] stated that both her sister and a friend were sexually assaulted within the past year. Subsequent questioning elicited several equivocal responses. When asked whether she thought that she could set aside her emotions, she responded: "See, I'm not-I can't say yes and I can't say no, because I'm not really sure. I mean, because it still bothers me about my sister. * * * But I mean it'd be hard for me to kind of push it aside." [The p]rospective juror ... later stated, however: "I mean I could sit down and listen to the evidence and I could set aside-yeah-how I feel." She also stated that she could base her decision on the evidence adduced at trial and the applicable law. When questioned further regarding her statements as to whether she could set aside her feelings, [this] prospective juror ... stated: "It depends on the evidence and stuff." She also stated that she might be able to set aside her

feelings depending on what she hears in the courtroom and that the converse also is true-that she may not be able to set aside her feelings if certain things are said. She stated that she did not "know how [she] would react." The prospective juror explained: "I mean, I could sit there and listen to the evidence and say-you know-what I think about it and stuff, but I can't positively tell you yes or no that I will be either way."

The court then interjected to help determine whether the prospective juror could be impartial: "The question is not whether or not you think at this point you would find somebody guilty or not guilty. That's not the question. The question is, can you make that decision-can you set aside the emotional reac[tion] * * *?" [The p]rospective juror ... then answered: "See, that's what I'm saying. I'm not sure if I could or not."

As she was questioned further, the prospective juror stated: "I can't say for positive that I could sit there and actually be honest and say I won't let that bother how I feel about the case." When asked whether she could give any assurance that she would be able to set her feelings aside, she responded no. The prosecutor then questioned the prospective juror as follows:

"I'm a little confused. One minute it sounds like you're saying, 'Even though I have strong feelings, I can be fair and impartial and listen to the facts because it's not my sister in the case, it's something else, and I can listen to the facts and apply the law,' and then the next minute I hear you saying you're not sure you can do that.

Do you know whether you can be fair and impartial? I mean, you can't forget what happened to your sister, but can you decide this case-because it's possible that the State can muster enough evidence to convince you. So we need to know if you can say, 'Gee, I hate people who do that but the State just didn't quite get there this time?'"

At this point the prospective juror stated that she could be fair and impartial and base her decision solely on the evidence

adduced at trial. She also stated that she feels that this case is "totally different from [her] sister's." After considering the prospective juror's statements and the arguments of counsel, the trial court overruled appellant's challenge for cause, stating: "I think that with the clarification that this case is significantly factually different from what happened to her sister that she believes that she could be fair."

After the state had exercised two peremptory challenges and after appellant exercised three peremptory challenges as to the first twelve jurors, [this prospective juror] was seated as one of the two alternates. Apparently, appellant's trial counsel did not choose to exercise his one remaining peremptory challenge to excuse [this prospective juror], but instead, chose to excuse the other alternate juror.

We initially note (and appellant recognizes) that appellant has waived any error regarding the trial court's decision not to excuse [this alternate juror] for cause. In the case at bar, appellant did not exhaust his peremptory challenges. "[E]rror in the denial of a challenge of a juror for cause cannot be grounds for reversal when the defendant did not exhaust his peremptory challenges." *State v. Getsy* (1998), 84 Ohio St.3d 180, 191, 702 N.E.2d 866, 880 (citing *State v. Poindexter* (1988), 36 Ohio St.3d 1, 5, 520 N.E.2d 568, 572); *see, also, State v. Jones* (2001), 91 Ohio St.3d 335, 338-39, 744 N.E.2d 1163, 1172; *Stallings*, 89 Ohio St.3d at 288, 731 N.E.2d at 170. Moreover, we note that appellant, when exercising his peremptory challenge as to the alternate jurors, chose not to excuse [this alternate juror.] Thus, we believe appellant has waived all but plain error associated with the trial court's decision not to excuse [this alternate] juror ... for cause.

Appellant contends that the trial court committed plain error in failing to excuse [this alternate juror] for cause. Because appellant waived all but plain error, we may only reverse appellant's conviction if the complained of error affects one of appellant's substantial rights. See Crim.R. 52(B); *see, also, State v. Slagle* (1992), 65 Ohio St.2d 597, 603, 605 N.E.2d 916, 924-25; *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph two of the syllabus. An alleged error "does not

constitute a plain error * * * unless, but for the error, the outcome of the trial clearly would have been otherwise." Long, paragraph two of the syllabus; *State v. Stojetz* (1999), 84 Ohio St.3d 452, 455, 705 N.E.2d 329, 335; *State v. Campbell* (2000), 90 Ohio St.3d 320, 342, 738 N.E.2d 1178, 1201. Furthermore, the Ohio Supreme Court has stated that Crim.R. 52(B) is to be invoked "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Landrum* (1990), 53 Ohio St.3d 107, 111, 559 N.E.2d 710, 717.

To find plain error, a court must find that: (1) error exists; (2) the error is plain; and (3) the error prejudiced the defendant. *State v. Fields* (1994), 97 Ohio App.3d 337, 344, 646 N.E.2d 866, 871 (citing *United States v. Olano* (1992), 507 U.S. 725, 732-34, 113 S.Ct. 1770, 1777-78, 123 L.Ed.2d 508); see, also, State v. Latson (1999), 133 Ohio App.3d 475, 728 N.E.2d 465. Prejudice exists if the error "created a manifest injustice or seriously affected the 'fairness, integrity or public reputation of [the] judicial proceedings.'" *Fields*, 97 Ohio App.3d at 344, 646 N.E.2d at 871 (quoting *Olano*, 507 U.S. at 736, 113 S.Ct. at 1779, 123 L.Ed.2d 508). We conduct our review accordingly.

Crim.R. 24(B) governs challenges for cause in a criminal case. Crim.R. 24(B)(9) provides that jurors may be challenged as follows:

That he is possessed of a state of mind evincing enmity or bias toward the defendant or the state; but no person summoned as a juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from the examination of the juror or from other evidence, that he will render an impartial verdict according to the law and the evidence submitted to the jury at the trial.

"Trial courts have discretion in determining a juror's ability to be impartial." *State v. Cornwell* (1999), 86 Ohio St.3d 560, 562, 715 N.E.2d 1144, 1149 (citing *State v. Williams* (1983), 6 Ohio St.3d 281, 288, 452 N.E.2d 1323, 1331). "A prospective juror challenged for cause should be excused 'if the court has any

doubt as to the juror's being entirely unbiased.' " Id. (quoting R.C. 2313.43). A reviewing court should not disturb a trial court's decision regarding a challenge for cause unless the ruling " 'is manifestly arbitrary * * * so as to constitute an abuse of discretion." ' *State v. Stallings* (2000), 89 Ohio St.3d 280, 287, 731 N.E.2d 159, 169-70 (quoting *State v. Tyler* (1990), 50 Ohio St.3d 24, 31, 553 N.E.2d 576, 587). Moreover, " 'deference must be paid to the trial judge who sees and hears the juror.' " *Id.*, 89 Ohio St.3d at 288, 731 N.E.2d 159, 170 (quoting *Wainwright v. Witt* (1985), 469 U.S. 412, 426, 105 S.Ct. 844, 853, 83 L.Ed.2d 841).

"While fairness requires that jurors be impartial, jurors need not be totally ignorant of the facts and issues involved." *State v. Jones* (2001), 91 Ohio St.3d 335, 338, 744 N.E.2d 1163, 1172. In *Jones,* for example, the court found no error with the trial court's failure to excuse a juror who stated that he was biased against the defendant when the juror also stated that he would decide the case based only upon the evidence and that he would accord the defendant the usual presumption of innocence.

In the case *sub judice*, we do not believe that the trial court abused its discretion by failing to excuse [the alternate juror] for cause. Although [the alternate juror] expressed her strong emotions about her sister's ordeal, she also stated that she could be fair and impartial and that she would decide the case based only upon the evidence. *See id.*

Additionally, we disagree with appellant that the presence of one of the impaneled jurors, ... deprived appellant of a fair and impartial jury. Appellant complains that because [that juror] knew the victim, the juror's ability to be fair and impartial was compromised. We note, however, that the trial court, with defense counsel present, inquired about [that juror's] ability to be fair and impartial. Both the trial court and appellant's trial counsel expressed satisfaction with the juror's responses. Furthermore, "[w]hether a prospective juror knew the victim of an offense * * * is not, *per se*, a basis for dismissal for cause." *State v. Sheppard* (1998), 84 Ohio St.3d 230, 235, 703 N.E.2d 286, 292. We therefore find no abuse of the trial court's discretion.

> Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.

*State v. Wright, supra*, 2001 WL 1627643.

The appellate court reviewed claim two for plain error only, and petitioner thereby appears to have waived this claim for federal habeas corpus review. *See Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000)(plain error review does not constitute a waiver of the state's procedural default); *Brown v. Burbary*, 2004 WL 1563110 (W.D.N.Y. June 28, 2004)(claim of juror bias waived by failure to exhaust peremptory challenges). However, respond did not raise the affirmative defense of procedural default. This Court therefore will consider the merits of petitioner's claim. *See Trest v. Cain*, 522 U.S. 87, 89 (1997)(state's failure to raise procedural default normally constitutes waiver of the defense); *Gray v. Netherland*, 518 U.S. 152 (1996).

The Sixth Amendment guarantees a criminal defendant the right to trial by a fair and impartial jury. *Morgan v. Illinois*, 504 U.S. 719, 726-27 (1992); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). "The presence of even a single biased juror deprives a defendant of his right to an impartial jury." *Williams v. Bagley*, 380 F.3d 932, 943-44 (6th Cir. 2004), citing *Morgan v. Illinois, supra*, 504 U.S. at 729. "Qualified jurors need not, however, be totally ignorant of the facts and issues involved." *Murphy v. Florida*, 421 U.S. 794, 799-800 (1975).

> To hold that the mere existence of any preconceived notion as to the guilt or innocence of the accused, without more, is sufficient to rebut the presumption of a prospective juror's

> impartiality would be to establish an impossible
> standard. It is sufficient if the juror can lay aside
> his impression or opinion and render a verdict
> based on the evidence presented in court.
>
> *Irwin,* 366 U.S. at 723, 81 S.Ct. 1639. When faced with an
> allegation of [juror] bias ... the question becomes "did a juror
> swear that he could set aside any opinion he might hold and
> decide the case on the evidence, and should the juror's
> protestation of impartiality have been believed." *Patton v.
> Yount,* 467 U.S. 1025, 1036, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984).
> A trial court's finding of impartiality is a factual determination
> entitled to 28 U.S.C. § 2254(e)'s presumption of correctness,
> *Dennis v. Mitchell,* 354 F.3d 511, 520 (6th Cir. 2003), and may "be
> overturned only for 'manifest error.'" *Hill v. Brigano,* 199 F.3d
> 833, 843 (6th Cir. 1999)(quoting *Patton,* 467 U.S. at 1031, 104
> S.Ct. 2885).

*Williams v. Bagley, supra,* 380 F.3d at 944; *see also Palmer v. Romanowski,* 2009 WL 2166548

(W.D. Michigan July 17, 2009)(same).

As noted by the state appellate court, petitioner failed to exercise all of his

peremptory challenges even after the trial court denied his motion to excuse the alternate

juror for cause. *Trial Transcript,* Vol. I, at 96-97; 209; *see also Exhibit 4* to *Return of Writ.*

Moreover, petitioner cannot establish that he was prejudiced by the trial court's failure to

excuse this juror for cause because she did not sit on the jury that determined his guilt.

Nothing in the record before this Court supports petitioner's allegation that his attorney

thereafter failed to request the removal of the empaneled regular juror merely because the

alternate juror would have replaced that empaneled juror. In any event, the record

likewise fails to reflect that the regular juror was biased against petitioner based on her

prior contacts with the alleged victim such that petitioner was denied a constitutionally fair

trial.  *See Williams, v. Bagley, supra.*

The trial court conducted an inquiry of the regular juror after she advised the court that she knew the alleged victim.  *See Trial Transcript,* Vol. I, at 260-67.  The regular juror stated that she had seen the alleged victim in the office of the elementary school where she picked up her children from school.  *Id.,* at 261-262.  The regular juror "liked" the alleged victim, who had made her laugh.  *Id.,* at 262-263.  Their only contact, however, had been casual, and in the office of the elementary school.  They were not friends.  *Id.,* at 263.  The regular juror probably "would feel" for the alleged victim, as she would for anyone.  *Id.,* at 262.  The record in this case reflects the following:

> MR. SPAHR [PROSECUTOR]: I guess the bottom line is ... we were talking during the whole voir dire about people being fair and impartial and can judge credibility [sic] the same for everybody ...  And I guess we just need to know, because you know her and you like her and you laughed with her, will that affect your ability to be fair and impartial to both sides?
>
> JUROR . . . : I don't know.  I really don't know ....
>
> MR. SPAHR: And I don't know exactly where Mr. Baumgartel is going on the cross examination; but, if he asked a series of questions that made it look like she was telling something other than the truth, or he calls witnesses someplace along the line that differ significantly from her testimony, would you be able to say, "Well, even though she makes me laugh and I like her, she probably wasn't telling the truth"?  Would you be able to do that?
>
> JUROR . . . : Yeah, probably.  I probably could.
>
> MR. SPAHR: Are you pretty sure you could do that?  I mean, that's what we're talking about here, whether you can be fair to both sides.

JUROR . . .: You know, I've been around kids all my life and I can judge them pretty good.

MR. SPAHR: You can still be fair to both the defendant and the State of Ohio and not give her more credibility than she might deserve?

\*\*\*

JUROR . . .: It's tough. I can do my best, is all I can say.

\*\*\*

MR. BAUMGARTEL [DEFENSE COUNSEL]: ... [W]ould you be afraid to vote not guilty because of what she might think?

JUROR . . .: No.

MR. BAUMGARTEL: You don't think that will have any effect or bearing on your decision? You could still go by just what you hear in the courtroom? I guess, obviously, that's what it comes down to ...

JUROR . . .: Yeah, I think I can. I think I can decide it on what I hear. You know, I just wanted to bring out that I did - - I didn't know her by name but I have talked to her and seen her.

*Id.,* at 262-266. The alleged victim had never discussed the charges in the case with the juror. *Id.,* at 266. Significantly, neither the prosecutor nor defense counsel requested that this juror be removed from the jury. *Id.*

Thus, the record reflects that this juror's contacts with the alleged victim were casual and brief. The juror had not discussed the case with the alleged victim. Although the juror initially indicated that she had some reservation, based on her contacts with the alleged victim, regarding her ability to be fair to both sides, she thereafter stated that she thought

that she could be a fair and impartial juror and would not be afraid to enter a not guilty verdict. The fact that she stated that she "thought" she could decide the case solely on what she heard at trial and that she "probably" would be able to fairly determine whether the alleged victim was truthful does not, when viewed in context, indicate that the juror was biased against petitioner. *See, e.g., Miller v. Francis,* 269 F.3d 609, 618-619 (6th Cir. 2001)("venire members commonly couch their responses to questions concerning bias in terms of "I think" and use of such language cannot necessarily be construed as an equivocal response). The facts of this case can be contrasted with those presented in *Wolfe v. Brigano, supra,* where

> the petitioner claimed that the trial court violated his Sixth Amendment right to an impartial jury when it refused to remove ... biased jurors for cause. The first juror had an ongoing business relationship with the victim's parents. He had talked to the victim's parents and "listened to them" and did not believe that he could be fair and impartial.... The second juror stated that she could be fair and impartial, but disclosed that she and her husband were "close friends" of the victim's parents, whom they visited "quite a bit." Furthermore, the victim's parents had discussed with her husband what they thought took place when their son was killed, and her husband later related that information to her at some length....
>
> [The United States Court of Appeals for the Sixth Circuit] found that the[se] jurors were biased and should have been excused for cause due to their "close and ongoing" relationships with the victim's parents coupled with their knowledge of the case obtained from the victim's parents.... Neither of the jurors stated unequivocally that he or she could decide the case fairly notwithstanding the relationship with the victim's parents. *Id.* The first juror admitted that he did not think he could be fair and impartial. The second juror stated

that she could be fair and impartial, but we found her assessment inconceivable considering her close relationship with the victim's parents and the fact that she was aware of the family's theory of the victim's death. *Id.* Given the facts of that case, it was not sufficient that the trial court was ultimately able to extract the juror's tentative statements that they would try to be fair and impartial. *Id.* at 503.

*Miller v. Francis, supra,* 269 F.3d at 617-618, citing *Wolfe v. Brigano, supra,* 232 F.3d at 502-503.

Additionally, "[j]urors are presumed to be impartial." *Djoumessi v. Wolfenbarger,* 2007 WL 2021837 (E.D. Michigan July 12, 2007), citing *Irvin v. Dowd,* 366 U.S. at 723.

"[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation.... Due process means a jury capable and willing to decide the case solely on the evidence before it ...." *Smith v. Phillips,* 455 U.S. 209, 217, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982)....

A biased juror ... "is one who has a predisposition against or in favor of the defendant. In a more limited sense, a biased juror is one who cannot 'conscientiously apply the law and find the facts.'" *Franklin v. Anderson,* 434 F.3d 412, 422 (6th Cir. 2006)(quoting *Wainwright v. Witt,* 469 U.S. 412, 423, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985)). "If an impaneled juror was actually biased, the conviction must be set aside." *Hughes v. United States,* 258 F.3d 453, 463 (6th Cir. 2001).

\*\*\*

A court may rely on a juror's "assurances of impartiality in deciding whether a defendant has satisfied his burden of proving actual prejudice." *Hughes v. United States,* 258 F.3d at 459-60 (citing *United States v. Pennell,* 737 F.2d 521, 533 (6th Cir. 1984)).

*Djoumessi v. Wolfenbarger, supra.* In short, nothing in the record provides any reason to

discount the impaneled juror's assurances that she could serve as a fair and impartial juror

in this case.  *See Wolfe v. Brigano, supra,* 232 F.3d at 502.  The state court's rejection of petitioner's claim does not warrant federal habeas corpus relief.  *See* 28 U.S.C. §2254(d); *see also Williams v. Taylor, supra.*

Claim two is without merit.

### CLAIM THREE

In claim three, petitioner asserts that he was denied the effective assistance of trial counsel because his attorney failed to preserve for appellate review all errors which occurred during jury selection; failed to conduct reasonable pre-trial investigation; and failed to object to the trial court's limiting instructing on Briana Nunn's testimony.  On direct appeal, the state appellate court rejected this claim in relevant part as follows:

> The Sixth Amendment right to counsel protects "the fundamental right to a fair trial." [*Strickland v. Washington*], 466 U.S. [668,] 684, 104 S.Ct. 2052, 80 L.Ed.2d 674.  "A fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding."  *Id.,* 466 U.S. at 685, 104 S.Ct. 2052, 80 L.Ed.2d 674.  Thus, effective counsel is one who "plays the role necessary to ensure that the trial is fair."  *Id.,* 466 U.S. at 685, 104 S.Ct. 2052, 80 Led.2d 674.  Therefore, "the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Id.,* 466 U.S. at 685-86, 104 S.Ct. 2052, 80 L.Ed.2d 674.
>
> To establish that defense counsel's conduct so undermined the functioning of the adversarial process, a defendant must establish: (1) that counsel's performance was deficient"; and (2) that the "deficient performance prejudiced the defense."  *Id.,*

466 U.S. at 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; *see, also, State v. Murphy* (2001), 91 Ohio St.3d 516, 538, 747 N.E.2d 765, 794. Counsel's performance is deficient if he "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; *see, also, State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, cert. den. (1990), 497 U.S. 1011, 110 S.Ct. 3258, 111 L.Ed.2d 768 (stating that counsel's performance is deficient if counsel substantially violated one of his essential duties to his client); *State v. Peeples,* (1994), 94 Ohio App.3d 34, 44, 640 N.E.2d 208, 215 (stating that counsel's performance is deficient if it "raises compelling questions concerning the integrity of the adversarial process"). Counsel's performance is deficient if it falls below an objective standard of reasonable representation. *Murphy, supra; State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.

A reviewing court, when addressing an ineffective assistance of counsel claim, should not consider what, in hindsight, may have been a more appropriate course of action. *See State v. Phillips* (1955), 74 Ohio St.3d 72, 85, 656 N.E.2d 643, 658 (stating that a reviewing court must assess the reasonableness of the defense counsel's decisions at the time they are made). Rather, a reviewing court "must be highly deferential." *Strickland,* 466 U.S. at 689, 104 S.Ct. At 2065, 80 L.Ed.2d 674. As the *Strickland* Court stated, a reviewing court:

> "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"

*Id.,* 466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674.

Once a defendant overcomes the strong presumption that trial counsel's performance was reasonable, the defendant must establish that counsel's deficient performance prejudiced the defense. Prejudice exists if the deficient performance deprived

the defendant of a trial "whose result is reliable." *Id.,* 466 U.S. 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. Thus, "to establish prejudice, the defendant must show that 'there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.'" *State v. Fears* (1999), 86 Ohio St.3d 329, 346, 715 N.E.2d 136, 153, cert. denied (2000), 529 U.S. 1039, 120 S.Ct. 1535, 146 L.Ed.2d 349 (quoting *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus); *see, also, Murphy, supra.*

After our review of the case *sub judice,* we do not believe that appellant has overcome the strong presumption that his trial counsel's conduct constituted sound trial strategy. Moreover, assuming, *arguendo,* that trial counsel's performance was deficient, we do not believe that trial counsel's alleged errors deprived appellant of a trial whose result is reliable; that is, we conclude that a reasonable probability does not exist that the result of the trial would have been different but for counsel's alleged errors.

First, with respect to appellant's argument that trial counsel rendered ineffective assistance when he failed to request [the] removal [of the regular juror], we note that "[d]ebatable trial tactics do not constitute ineffective assistance of counsel." *State v. McNeill* (1998), 83 Ohio St.3d 438, 449, 700 N.E.2d 596, 608. Moreover, as we noted in our discussion of appellant's second assignment of error, simply because a juror knows the victim does not require a conclusion that the juror cannot be fair and impartial. *See Sheppard, supra.* Thus, we find that appellant's claim that trial counsel rendered ineffective assistance by failing to request [the] removal [of the regular juror] is meritless.

Second, we disagree with appellant that trial counsel was ineffective for failing to object to the trial court's jury instruction regarding the other acts evidence.

Appellant asserts prejudice resulted from trial counsel's failure to object to the following "incomprehensible" jury instruction that the trial court gave prior to permitting Nunn to testify about the prior sexual acts:

"***[T]he evidence which has been requested is admitted for a limited purpose. It is not intended to be and cannot be considered value of proof of bad character or that he is more likely to commit the offenses charged because he may have committed similar or related offenses in the past. This evidence cannot and should not be considered for that purpose.

The evidence may be used by you to assist in making a determination as to whether or not the defendant used force or threat of force, if such you find, with purpose to compel [the victim] to engage in sex[ual] conduct with him, if such you find. It relates only to the issue of purpose as an additional finding of the offense of rape, if you find from other evidence, and only from other evidence, that the defendant engaged in sexual conduct with [the victim]."

At the close of the evidence, the trial court further instructed the jury as follows with respect to the other acts evidence:

"Evidence has been admitted that the defendant may have committed criminal acts other than those set forth in the indictment. This evidence has been admitted for a limited purpose. It is not intended to be, and cannot be, considered by you as proof of bad character of the defendant and that he was more likely to commit the offenses charged because he may have committed similar or related offenes in the past. The evidence cannot, and should not, be considered for this purpose. The evidence may only be used by you to assist you in making a determination of whether or not the defendant used force or the threat of force, if is such you find, with the purpose to compel [the victim] to engage in sexual conduct with him, if such you find. It relates only to the issue of purpose as to the additional finding to the offense or rape, if you find from other evidence, and only from other evidence, that the defendant engaged in sexual conduct with [the victim]."

Appellant argues that the foregoing instructions were incomprehensible, in part, because the other acts evidence "could not be admitted for the state purpose it was admitted

*** and thus, no appropriate instruction, could have been properly crafted." As we stated in our discussion of appellant's first assignment of error, however, we concluded that the trial court properly admitted the other acts evidence. Thus, we find no error with the trial court giving a jury instruction relating to the other acts evidence.

Appellant further asserts that the instructions "fail[] to clarify how [the other acts] evidence goes to the element of 'purpose to compel with force or threat of force.'" We disagree with appellant. We believe that the trial court crafted an appropriate instruction regarding the limited purpose of the other acts evidence. The trial court informed the jury that the other acts evidence could not be used as proof of appellant's guilt. The trial court adequately advised the jury that Nunn's testimony concerning her father's method of coercing her into performing oral sex related only to whether he used force or threatened the use of force when committing the offenses against Samantha. Thus, we do not believe that appellant's trial counsel provided ineffective assistance by failing to object to the trial court's jury instruction.

*State v. Wright, supra,* 2001 WL 1627643.

Additionally, in post conviction proceedings, the state appellate court rejected petitioner's claim of ineffective assistance of counsel in relevant part as follows:

Wright asserted that his trial counsel was ineffective in that he failed to: (1) question witnesses, call potential witnesses, or otherwise present evidence regarding the victim's prior false allegations of sexual abuse; (2) present an expert witness; and (3) exercise all peremptory challenges, thereby waiving all but plain error on the court's ruling denying his challenge to a prospective juror.

In support of his petition, Wright submitted two affidavits, investigative notes on six individuals, a copy of a 1995 article regarding child sex abuse allegations in the context of domestic relations matters, and notes that his trial counsel made during voir dire.

43

The affidavits Wright submitted were sworn to by Wright's fiancé, Jean Thorp, and by Tabitha Hickmott, who is Thorp's daughter and the victim's sister. Thorp averred in relevant part: (1) that she believes her ex-husband, Jeff Hickmott, sexually abused the victim; (2) that the victim has made at least one unsubstantiated allegation of sexual abuse against someone other than Wright; and (3) that the victim has a history of behavioral problems related to sexually inappropriate conduct. Hickmott averred: (1) that Wright did not sexually abuse her; (2) that she never saw Wright sexually abuse the victim; and (3) that Children's Services questioned her repeatedly about whether Wright abused her.

The investigative reports Wright submitted contain notes made by an investigator regarding interviews of six individuals: Betty Pickenpaugh, a neighbor of the victim; Dale Marshall, a friend of the victim's father; Tara Lightfritz, Marshall's girlfriend; Karianne Lent, Wright's niece, and Scott and Lisa Lent, Wright's former neighbors. The investigative notes indicate that these individuals either heard others talk about the victim engaging in or speaking about sexually inappropriate behavior, or actually witnessed the victim engage in or speak about sexually inappropriate behavior. The notes reflect that: (1) Pickenpaugh saw the victim sitting naked in a window; (2) Karianne Lent, who was also eleven years old, learned how to masturbate and mimic sex with a teddy bear from the victim; and (3) Lightfritz saw the victim lick a popsicle like a penis when the victim was nine years old. The report on Marshall indicates that the victim's father once confronted Marshall with the victim's allegation that Marshall forced her to engage in sexual contact.

The article Wright submitted relates to suggested guidelines for courts considering sexual abuse allegations in the context of domestic relations matters. The notes made by Wright's trial counsel during voir dire characterize counsel's assessment of two of the jurors: [the alternate and the regular juror discussed *supra*]. Counsel wrote "bias" and "No" next to [the alternate's] name, and "good" next to [the regular jurior's] name. For the remaining jurors and potential jurors, counsel listed facts such

as family or employment information, but he did not note his subjective assessment of them.

The court denied Wright's petition, finding that he failed to submit evidentiary documents containing sufficient operative facts to warrant a hearing on the petition. The judge, who also presided over Wright's trial, determined that the affidavits lacked credibility. The court noted that the investigative reports contained hearsay upon hearsay. Additionally, the court found that the information contained in the affidavits and reports was largely cumulative to the evidence presented at trial, and that the statements contained in the affidavits and reports, even if true, were not inconsistent with a finding that Wright raped the victim.

The court noted that the article, which spoke generally regarding the problem of false allegations of sexual abuse in domestic relations matters, was not specific to Wright's case. Moreover, the court noted that one of the article's central findings, that the existence of a corroborating confession constitutes a strong indicator that sexual abuse allegations are truthful, actually supports Wright's conviction. Finally, the court found that res judicata barred Wright's argument with respect to trial counsel's failure to exercise a peremptory challenge to excuse [the alternate juror].  The court also noted that Wright did not suffer any prejudice as a result of the failure to excuse [the alternate juror], as [the alternate juror] served as an alternate juror and did not participate in deliberations.

***

The trial court noted that the investigative reports do not constitute evidence such that the court was required to give them any weight. We agree. *See Brinkley, supra.* The reports are not sworn, they constitute hearsay, and in some instances contain double and triple hearsay. Wright does not assert that any exception to the rule against hearsay applies, and offers no explanation for his use of an investigator's notes instead of affidavits from the potential witnesses themselves. Moreover,

even if we accept the information contained in the investigative notes as true, we agree with the trial court's assessment that the information was inadmissible, cumulative to evidence presented through other witnesses, or irrelevant.

Wright directs us to the United States Supreme Court's decision in *Wiggins v. Smith* (2003), 539 U.S. 510, for the proposition that the court should not construct strategic decisions that trial counsel did not offer to support the reasonableness of counsel's performance. He contends that the trial court constructed strategic decisions here by speculating that his counsel did not call the individuals listed in the investigative reports as witnesses because they would have offered only inadmissible evidence. In *Wiggins*, trial counsel conducted no investigation whatsoever into mitigating circumstances that might have impacted the defendant's sentence and presented no mitigating evidence. Here, in contrast, the record shows that Wright's trial counsel knew of the witnesses identified in the investigation notes, subpoenaed them, and chose not to call the majority of them to testify. This evinces strategy, not a failure to investigate. We will not second-guess trial counsel's strategic decisions regarding which individuals he should subpoena or call to testify. *See Carter, supra.*

The trial court assigned little credibility to the affidavits of Thorp and Hickmott due to their relationships with Wright. Because the same judge who presided over Wright's trial reviewed Wright's petition, she was best able to assess the credibility of the affidavits. Additionally, the court noted the affidavits have little relevance. Thorp carries an obvious bias toward Wright given that she is engaged to marry him, and the judge, who also presided at Wright's trial, was entitled to disregard her affidavit. See Calhoun, supra. Likewise, the fact that Hickmott is Thorp's daughter discounts her credibility. The fact that Hickmott did not observe any sexual abuse hardly supports a conclusion that the abuse did not occur, and Wright does not contend that the victim alleged Hickmott witnessed any abuse. Similarly, the tactics that Children's Services used to question Hickmott are immaterial, given that the victim's abuse came to light not upon intervention by the

agency, but upon the victim reporting the abuse to a family friend who then contacted the agency.

The article regarding sexual abuse allegations in domestic relations cases does not constitute evidentiary material sufficient to require a hearing on a petition for post-conviction relief. *See, Elmore, supra*. The article bears marginal relevance to the case at bar. It does not refer to Wright specifically. It is directed toward domestic relations disputes, not criminal allegations. Moreover, as the trial court noted, the article indicates that an important basis for finding sexual abuse allegations truthful is the existence of a corroborating confession. Here, Wright confessed to the version of events given by the victim. Wright's trial counsel's effective arguments resulted in the court suppressing his statement, but any expert called to assess the evidence would have been informed of Wright's confession.

Finally, we find that the trial court did not abuse its discretion in finding that the handwritten notes of Wright's trial counsel do not constitute evidentiary documents setting forth sufficient operative facts to warrant a hearing. Wright contends that his trial counsel was ineffective in his failure to exercise all peremptory challenges during jury selection. Wright's trial counsel sought to remove an alternate juror . . . for cause during voir dire. The trial court denied the motion to remove [her] for cause. Wright's counsel did not seek to remove [her] via a peremptory challenge.

During trial, a member of the jury panel . . . realized that she knew the victim and alerted the court. The court offered to remove [her]. Wright's counsel declined to remove [her]. Wright contends that his counsel's failure to remove [the alternate juror] with a peremptory challenge left him unable to remove [the regular juror], because [the alternate juror] would have replaced [the regular juror] on the panel. Wright acknowledges that this court considered and rejected this argument in his direct appeal, but contends that it is nonetheless a proper claim in this post-conviction proceeding because he supports it with documentary evidence.

As we noted above, evidence outside the record alone will not guarantee the right to an evidentiary hearing. *Combs, supra* at 97. The evidence must show that the petitioner could not have advanced his claim based on the information in the original trial record. *Id.; see, also, Lentz, supra*. Additionally, the evidence must meet some threshold level of cogency, must be genuinely relevant, and must materially advance the petitioner's claims. *Lawson, supra* at 315; *Watson, supra* at 325. Here, Wright raised his claim on direct appeal without resorting to evidence outside the record.

Although Wright submitted his counsel's voir dire notes as exhibits with his petition, he does not offer any explanation as to how these notes materially advance his claim of ineffective assistance of trial counsel. In fact, the notes appear to demonstrate that his counsel's decision to leave [the regular juror] on the panel was sound trial strategy. While counsel made factual notes about other jurors, counsel made only two notations clearly indicating his subjective assessment of the jurors: next to [the regular juror's] name, he wrote "good"; and next to [the alternate juror's] name, he wrote "bias" and "No." Because counsel did not place favorable notations next to any potential juror's name other than [the regular juror's], his notes support the inference that his decision to leave her on the panel was a strategic one. We decline to second-guess counsel's decision. *See Carter, supra*. With regard to [the alternate juror], Wright demonstrated no prejudice because she did not deliberate.

Upon review, we cannot find that the trial court abused its discretion in determining that Wright failed to support his petition with evidentiary documents sufficient to require a hearing on his motion for post-conviction relief. Wright did not present competent, relevant, or material evidence that materially advances his claim that his counsel's performance fell outside the wide range of reasonable professional assistance.

Accordingly, we affirm the judgment of the trial court.

*State v. Wright, supra,* 2006 WL 3861078.

Again, the state court's factual findings are presumed to be correct. 28 U.S.C. §2254(e). The record fails to reflect that the state appellate court's decision is so unreasonable as to justify federal habeas corpus relief. *See* 28 U.S.C. §2254(d); *Williams v. Taylor, supra.*

The right to counsel guaranteed by the Sixth Amendment is the right to effective assistance of counsel. *McMann v. Richardson,* 397 U.S. 759, 771 n.14 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington,* 466 U.S. at 687; *see also Blackburn v. Foltz,* 828 F.2d 1177 (6th Cir. 1987). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result fo the proceedings would have been different. *Id.,* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the

outcome." *Id.,* at 697.  Because petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, if the Court determines that petitioner has failed to satisfy one prong, it need not consider the other.  *Id.,* at 697.

To establish prejudice under *Strickland* by reason of an attorney's failure to strike an allegedly biased juror, petitioner must establish that the juror actually was biased against him.  *Johnson v. Luoma,* 425 F.3d 318, 326 (6th Cir. 2005), citing *Hughes v. United States,* 258 F.3d 453, 458 (6th Cir. 2001).  For the reasons discussed *supra,* petitioner has failed to establish that the regular juror was actually biased against him or that bias should be implied.  *Johnson v. Luoma, supra,* 425 F.3d at 326.[1]

The record likewise fails to reflect that counsel's apparent strategic decision not to call the additional defense witnesses referred to by petitioner constituted the ineffective assistance of counsel such that federal habeas corpus relief is warranted.  As noted by the state appellate court, petitioner presented two affidavits in support of his claim that additional defense witnesses would have assisted his defense.  The remaining purported testimony of possible defense witnesses came from a defense investigator's notes.  Thus,

---

[1]

> The doctrine of presumed or implied, as opposed to actual, bias provides that, in certain 'extreme' or 'exceptional' cases, courts should employ a conclusive presumption that a juror is biased." *Untied States v. Frost,* 125 F.3d 346, 379 (6th Cir. 1997)(citations omitted).  A finding of implied bias is appropriate only "where the relationship between a prospective juror and some aspect fo the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances." *Person v. Miller,* 854 F.2d 656, 664 (4th Cir. 1988).

*Johnson v. Luoma, supra,* 425 F.3d at 326.

as noted by the state appellate court,

> the record shows that Wright's trial counsel knew of the witnesses identified in the investigation notes, subpoenaed them, and chose not to call the majority of them to testify. This evinces strategy, not a failure to investigate.

*State v. Wright, supra.* Further, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland, supra,* 466 U.S. at 690.

> [A]n attorney's actions are strongly presumed to be the product of sound trial strategy, especially with respect to an attorney's decisions on whether to call witnesses or present other evidence. *See Chegwidden v. Kapture,* 92 F. App'x 309, 311 (6th Cir. 2004). On habeas review, [petitioner] must show that his counsel's failure to call certain witnesses was objectively unreasonable and prejudiced him. *Strickland,* 466 U.S. 687, 689-90, 694.

*Rafferty v. Hudson,* 2009 WL 2151832 (N.D. Ohio July 14, 2009). Moreover,

> [a]s a general rule, whether or not defense counsel should have hired a medical expert is the type of strategic choice by counsel that may not be second-guessed on habeas corpus review. *See Murden v. Artuz,* 253 F.Supp.2d 376, 389 (E.D. N.Y. 2001). In order to obtain habeas relief, petitioner must show that had counsel presented [the expert witness] at his trial, there would have been a reasonable probability of a different outcome. *See Pondexter v. Dretke,* 346 F.3d 142, 148 (5th Cir. 2003).

*Zavoda v. Lafler,* 2005 WL 3008590 (E.D. Michigan November 8, 2005). For the reasons detailed at length by the state appellate court, as well as by the state trial court in its decision denying petitioner's post conviction petition, *see Exhibit 33* to *Return of Writ,* petitioner has failed to meet this standard here. This Court is likewise unpersuaded that

the rejection by the Ohio Court of Appeals of petitioner's claim of ineffective assistance of counsel by reason of his attorney's failure to object to the jury instruction on other acts evidence was contrary to or constituted an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts so as to warrant relief in these proceedings. *See* 28 U.S.C. §2254(d); *Williams v. Taylor, supra.*

For all the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

If any party objects to this *Report and Recommendation,* that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the

decision of the District Court adopting the *Report and Recommendation.  See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,*  638 F.2d 947 (6th Cir. 1981).


November 30, 2009                                          s/Norah McCann King

                                                                Norah McCann King
                                                    United States Magistrate Judge